IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

MAY 1 4 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 1:14-CR-175 |
| | ) |
| JAMES THOMAS McBRIDE | ) |
| a/k/a "JT" | ) Count 1: 18 U.S.C. § 371 |
| a/k/a "Jaemes Thomas McBride" | ) (Conspiracy) |
| a/k/a "Jim McBride" | ) |
| (Counts 1 - 6) | ) Count 2: 18 U.S.C. §§ 915 & 2 |
| | ) (Causing the Impersonation of a Diplomat) |
| SHARYN JOY BROWN | ) |
| (Count 1) | ) Counts 3-6: 18 U.S.C. §§ 1028(a)(1) & 2 |
| | ) (Producing False Identification Documents) |
| Defendants | ) |
| | ) Forfeiture Notice |
| | ) |
| | ) **UNDER SEAL** |
| | ) |

## INDICTMENT

**MAY 2014 TERM — at Alexandria, Virginia**

### COUNT 1

**Conspiracy to Impersonate a Diplomat and Produce False Identification Documents**

(18 U.S.C. § 371)

THE GRAND JURY CHARGES THAT:

### Introductory Allegations

At all times relevant to this Indictment:

1.      Defendant James Thomas McBride (hereinafter "McBRIDE") resided in Hilliard, Ohio and Dublin, Ohio.

1

2.     Defendant Sharyn Joy Brown (hereinafter "BROWN") resided in Hilliard, Ohio.

<u>Background</u>

3.     On or about January 3, 2013, BROWN opened a business bank account ending in 9617 at Bank of America under the name of "One Global Estate Association."

4.     From on or about January 3, 2013 to on or about December 31, 2013, BROWN was a signatory on the business bank account ending in 9617 at Bank of America under the name of "One Global Estate Association."

5.     No later than on or about January 4, 2013 until on or about March 31, 2013, the account address on file for the Bank of America account ending in 9617 for "One Global Estate Association" was 1300 Pennsylvania Ave NW, Washington, D.C. 20004.

6.     From on or about April 1, 2013 until on or about January 31, 2014, the account address on file for the Bank of America account ending in 9617 for "One Global Estate Association" was 2783 Martin Road, PO Box 363, Dublin, Ohio.

7.     On or about January 31, 2013, BROWN opened up an account ending in 4642 with PayPal under the business name "One Global Estate Association." On that date, she entered the address for the account as 1300 Pennsylvania Avenue, Suite 190-715, Washington, D.C. 20004. She also entered a tax identification number (TIN) ending in 2225. Email addresses linked with the account included those affiliated with the website www.divineprovince.org. The Bank of America account ending in 9617 was linked with the PayPal account.

8.     On or about October 4, 2009, McBRIDE opened up an account ending in 8350 with PayPal under the business name "Notice Recipient." McBRIDE entered in a Social Security number ending in 0781 and a date of birth in February 1954. Email addresses affiliated with the account included notice_recipient@yahoo.com, noticerecipient@gmail.com, and

2

McBride's personal Yahoo email address. A business address for "Notice Recipient" in Hilliard, Ohio was entered into the PayPal account on or about March 20, 2012. The same address was entered into the account under the name "Sharyn Brown" on or about October 25, 2010.

9.      McBRIDE controlled and used a personal email account that was hosted by Yahoo.

10.     BROWN controlled and used a personal email account that was hosted by live.com.

The Conspiracy and Its Objects

11.     From in or around June 2012, and continuing thereafter until in or around September 2013, in the Eastern District of Virginia and elsewhere, the defendants, McBRIDE and BROWN, knowingly and willfully conspired and agreed together and with each other, and with other persons both known and unknown to the Grand Jury, to commit the following offenses against the United States:

a.   To cause others to falsely assume and pretend to be a diplomat, with the intent to defraud, and to demand and attempt to obtain money, paper, document, or other thing of value, in violation of Title 18, United States Code, Sections 915 and 2; and

b.   To produce, knowingly and without lawful authority, false identification documents, where the production of these documents was in or affected interstate commerce, or the false identification documents were transported in the mail, in violation of Title 18, United States Code, Sections 1028(a)(1), 1028(c)(3), and 2.

All in violation of 18 U.S.C. § 371.

3

## Manner & Means

12.     It was a part of the conspiracy that the defendants produced and sold identification documents, or IDs, entitled "International Diplomatic Driver Permit" and "Universal Post Office Diplomat." The IDs purported to be issued under the authority of the "Postmaster General" of "Divine Province." The IDs contained the true name and photograph of their bearers. The International Diplomat Driving Permit and Universal Post Office Diplomat IDs listed 1300 Pennsylvania Avenue Suite 190-715 Washington, D.C. as the issuing authority's address.

13.     McBRIDE and BROWN sold the IDs knowing, and with the intention, that bearers of the ID cards would use the cards in the United States to falsely pretend to be accredited diplomats and thus entitled to the privileges and immunities normally accorded accredited diplomats, such as exemption from state sales taxes and immunity from arrest, legal fines, and penalties. McBRIDE encouraged purchasers of the IDs to send copies of the IDs to the Internal Revenue Service, creditors, police departments, courts, and other governmental agencies to inform those bodies that bearers of the IDs were diplomats and not subject to the laws of the United States.

14.     McBRIDE, BROWN, and their co-conspirators sold these IDs through the "Office of the Postmaster General" and "Divine Province." McBRIDE and BROWN used the organizations as vehicles to enroll "members," who, after paying a membership fee, would then receive documents and information on how to assert their "sovereign" status and escape from taxes and other financial liabilities. Neither "Office of the Postmaster General" nor "Divine Province" is a sovereign entity recognized by the U.S. Department of State, and their

4

representatives do not qualify for accredited diplomatic status. Neither organization is
authorized to create or distribute international drivers' permits.

15.     McBRIDE, BROWN, and their co-conspirators sold and shipped most of the IDs
to purchasers via the United States Postal Service (USPS). McBRIDE, BROWN, and other co-
conspirators accepted most payments from purchasers via the PayPal accounts under the name of
"One Global Estate Association," with account number ending in 4642, and under the name of
"Notice Recipient," with account number ending in 8350.

16.     The co-conspirators maintained a website at www.divineprovince.org, which
hosted a database cataloging and verifying the IDs and their users. Visitors to the website could
also place online orders for the IDs. The website also had a members' only forum, where dues-
paying members of Divine Province could post, reply, and read each other's comments.

Overt Acts

In furtherance of the conspiracy, McBRIDE, BROWN, and their co-conspirators
committed overt acts in furtherance of the conspiracy, including, but not limited to, the
following:

17.     On or about June 15, 2012, McBRIDE went to the UPS store at 1300
Pennsylvania Avenue, Suite 190, Washington, D.C, and opened up a mailbox in the name of
"Office of the Postmaster General for Divine Province." McBRIDE was assigned the mailbox
number 715. This was the address later used on the International Diplomatic Driver's Permit and
Universal Post Office Diplomat IDs.

18.     From in or around June 2012 to in or around August 2012, McBRIDE developed
a plan to produce false identification documents, and procured the necessary materials and
equipment, including an ID making machine. On or about July 31, 2012, McBRIDE sent an

5

email from his personal email account that stated in pertinent part: "I think we are ready with the IDs now, or will be in a matter of days. We have developed an International Driver Permit which I have already tested with success. I am establishing the Office of the PMG as an Embassy where all members have full diplomatic immunity."

19.     On or about August 18, 2012, McBRIDE sent an email from his personal account to a co-conspirator, M.D., soliciting M.D.'s involvement and stating in pertinent part: "We are doing seminar in Ashburn, Virginia on Sept. 7-9 where we will be issuing IDs. I would love to have you there."

20.     From on or about September 7-9, 2012, McBRIDE organized and hosted a conference at the Washington Dulles Hilton, located at 13869 Park Center Road, Herndon, Virginia, within the Eastern District of Virginia. The conference was under the auspices of "Office of the Postmaster General" and "Divine Province." Around 100 to 150 individuals attended the conference. McBRIDE traveled from out of state to the Eastern District of Virginia for purposes of hosting the conference.

21.     At the conference, McBRIDE oversaw the sale of International Diplomatic Driver's Permits and Universal Post Office Diplomat cards for 5 ounces of silver, worth approximately $168.15 at the time. McBRIDE brought an ID making machine and camera to the conference to make IDs for the conference attendees. Some IDs were produced at the conference; others were sent later via USPS to conference attendees who had paid for the IDs at the conference. While conference attendees generally paid for the IDs with silver, United States currency was also accepted.

22.    At the conference, McBRIDE caused the sale of International Driver's Permits and Universal Post Office Diplomat identification cards to, among other attendees, K.D.W. and A.L.J.

23.    No earlier than on or about October 30, 2012, McBRIDE caused the production, and mailing to an address in the Eastern District of Virginia, of an International Diplomatic Driver's Permit and a Universal Post Office Diplomat identification card for J.H.V., bearing the true photo and name of J.H.V.

24.    A co-conspirator, M.D., also managed the production and transfer of some of the IDs from her home in Pennsylvania. On November 4, 2012, M.D., sent an email from her personal email account to a number of individuals regarding ID production that stated in pertinent part: "You must email a new picture to this email ASAP so we may process your order. Please, your photo MUST be a passport quality image 2x2. . . . We are diplomats and my job is to make you look like one!"

25.    On or about November 28, 2012, McBRIDE sent a payment of $10,000 via PayPal to co-conspirator M.D. to cover her expenses and compensate her for her role in producing the IDs.

26.    On or about December 5, 2012, another co-conspirator, R.E., established an email address connected to the divineprovince.org website for BROWN's use.

27.    On or about December 6, 2012, McBRIDE, using his personal email account, requested that co-conspirator R.E., the webmaster, give BROWN administrative privileges for the Divine Province website and access to the financial and ID databases.

28.    No earlier than on or about December 12, 2012, McBRIDE caused the production, and mailing to an address in the Eastern District of Virginia, of an International

7

Diplomatic Driver's Permit and a Universal Post Office Diplomat identification card for S.A.S., bearing the true photo and name of S.A.S.

29.     On or about January 5, 2013, BROWN, using an email account associated with divineprovince.org, requested that an individual who had placed an online order for the Divine Province IDs provide proof of payment via PayPal.

30.     On or about January 05, 2013, BROWN, using her personal email account, requested that a purchaser of the Divine Province IDs provide a list of members whose IDs the purchaser had paid for, for purposes of "updating our membership lists and processing ID's."

31.     On or about January 30, 2013, BROWN, using her personal email account, instructed co-conspirators M.D. and C.M. not to mail any more IDs, in accordance with McBRIDE's instructions, until proof of payment could be verified.

32.     On or about January 30, 2013, BROWN, using her personal email account, emailed co-conspirators M.D. and C.M. and requested the following: "Hi Divas, I am not sure who to direct this to, so I am sending it to you both. Please send me Nov, Dec and Jan (after month end) all copies of money orders for membership and or ids. In the future, all payments for id should go to Jim McBride, P.O. Box 28606, Columbus, Ohio 43228 per Jim. Also effective February 1st, I will be in charge of sending you monthly checks. thanks, Sharyn."

33.     On or about February 14, 2013, after a Divine Province member, who had purchased the false diplomatic IDs at the Virginia seminar, complained that he could not verify his IDs with Divine Province's database, BROWN manually added his ID numbers to his member account.

34.     On April 22, 2013, co-conspirator C.M. using an account associated with divineprovince.org, emailed other individuals and co-conspirators and made the following

request of BROWN: "Sharyn – is there a list of the people who purchased IDs in Virginia and if so should we go into DAP and list them as already paid so they can register their ID information online for the telephone verification system?"

35.     On September 14, 2013, McBRIDE informed BROWN via a telephone call to no longer process orders for the IDs and to tell purchasers there was a problem with the equipment.

36.     The co-conspirators issued no fewer than 889 International Diplomat Driving Permits and 892 Universal Post Office Diplomat IDs, the vast majority of which were sent to purchasers via the USPS.

COUNT 2

**Causing the Impersonation of a Diplomat**
(18 U.S.C. §§ 915 & 2)

THE GRAND JURY FURTHER CHARGES THAT:

37.     Paragraphs 1-10 and 12-36 of this Indictment are hereby realleged and incorporated as though set forth fully herein.

38.     On September 19, 2013, McBRIDE caused the impersonation of a diplomat when S.A.S., a member of Divine Province, falsely assumed and pretended, with intent to defraud, to be a duly accredited diplomat and attempted to obtain a thing of value.

39.     On that date, S.A.S. was stopped by a patrol officer with the Fairfax County Sherriff's Office in the Eastern District of Virginia.  When the officer requested that S.A.S. produce her driver's license, S.A.S. presented her "International Diplomatic Driver's Permit" and "Universal Post Office Diplomat" IDs, which McBRIDE had issued to S.A.S.  When pressed for additional identification, S.A.S. claimed she was a diplomat and these were all the documents she was required to present.  A records check revealed that S.A.S.'s Virginia state license had been suspended on September 9, 2013.

(In violation of Title 18 of the United States Code, Sections 915 & 2.)

10

COUNT 3

**Producing False Identification Documents**
(18 U.S.C. § 1028(a))

THE GRAND JURY FURTHER CHARGES THAT:

40.     Paragraphs 1-10 and 12-36 of this Indictment are hereby realleged and incorporated as though set forth fully herein.

41.     In or around December 2012, McBRIDE knowingly and without lawful authority caused the production of false identification documents, specifically false diplomatic IDs with the true name and photo of S.A.S., and the documents were mailed via the United States Postal Service to S.A.S. at an address in the Eastern District of Virginia.

(In violation of Title 18, United States Code, Sections 1028(a)(1), 1028(c)(3)(B), and 2.)

11

COUNT 4

**Producing False Identification Documents**
(18 U.S.C. § 1028(a))

THE GRAND JURY FURTHER CHARGES THAT:

42.    Paragraphs 1-10 and 12-36 of this Indictment are hereby realleged and incorporated as though set forth fully herein.

43.    In or around September 2012, McBRIDE knowingly and without lawful authority caused the production of false identification documents, specifically false diplomatic IDs with the true name and photo of A.L.J. These documents were produced in interstate commerce in that McBRIDE travelled to the Eastern District of Virginia from outside the state to produce and sell such documents, and he and his co-conspirators did produce and sell such documents to A.L.J. in the Eastern District of Virginia.

(In violation of Title 18, United States Code, Sections 1028(a)(1), 1028(c)(3)(A), and 2.)

COUNT 5

**Producing False Identification Documents**
(18 U.S.C. § 1028(a))

THE GRAND JURY FURTHER CHARGES THAT:

44.    Paragraphs 1-10 and 12-36 of this Indictment are hereby realleged and incorporated as though set forth fully herein.

45.    In or about September 2012, McBRIDE knowingly and without lawful authority caused the production of false identification documents, specifically false diplomatic IDs with the true name and photo of K.D.W. These documents were produced in interstate commerce in that McBRIDE travelled to the Eastern District of Virginia from outside the state to produce and sell such documents, and he and his co-conspirators did produce and sell said documents to K.D.W. in the Eastern District of Virginia.

(In violation of Title 18, United States Code, Sections 1028(a)(1), 1028(c)(3)(A), and 2.)

COUNT 6

**Producing False Identification Documents**
(18 U.S.C. § 1028(a))

THE GRAND JURY FURTHER CHARGES THAT:

46.     Paragraphs 1-10 and 12-36 of this Indictment are hereby realleged and incorporated as though set forth fully herein.

47.     No later than on or about October 30, 2012, McBRIDE knowingly and without lawful authority caused the production of false identification documents, specifically false diplomatic IDs with the true name and photo of J.H.V., and the documents were mailed via the United States Postal Service to J.H.V. at an address in the Eastern District of Virginia.

(In violation of Title 18, United States Code, Sections 1028(a)(1), 1028(c)(3)(B), and 2.)

## FORFEITURE NOTICE

48.     Pursuant to Rule 32.2(a), FED. R. CRIM. P., the defendants are hereby notified that, if convicted of any of Counts One or Three through Six of this Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds the defendants obtained directly or indirectly as a result of such offenses.  Property subject to forfeiture includes, but is not limited to, a sum of money equal to at least $159,805.00, representing the amount of proceeds obtained as a result of the offenses alleged in the Indictment, for which the defendants are jointly and severally liable.

49.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 1028(g), the defendants shall forfeit substitute property, up to the value of the amount described above, if, by any act or omission of the defendants, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

(In accordance with 18 U.S.C. § 1028(g) and 21 U.S.C. § 853(p).)

15

A TRUE BILL: Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
FOREPERSON

Dana J. Boente,
United States Attorney

_____
William E. Johnston
Special Assistant United States Attorney
Kosta S. Stojilkovic
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700

16