1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
------------------------------:
                              :
UNITED STATES OF AMERICA      :
                              :
                              :
     -vs-                     :    Case No. 1:14-cr-175
                              :
                              :
JAMES T. McBRIDE,             :
              Defendant.      :
                              :
------------------------------:
```

MOTIONS HEARING

June 4, 2014

Before:   Ivan D. Davis, Mag. Judge

APPEARANCES:

William E. Johnston, Counsel for the United States

Jeffrey D. Zimmerman, Counsel for the Defendant

The Defendant, James T. McBride, in person

2

1          NOTE:  The case is called to be heard at 2:02 p.m. as

2     follows:

3          THE CLERK:  The United States versus James Thomas

4     McBride, case number 14-cr-175.

5          MR. ZIMMERMAN:  Good afternoon, Your Honor.  Jeffrey

6     Zimmerman on behalf of Mr. McBride.

7          THE COURT:  Good afternoon.

8          MR. JOHNSTON:  Good afternoon, Your Honor.  William

9     Johnston on behalf of the United States.

10          THE COURT:  Good afternoon.  All right.  This matter

11     comes before the Court for a detention hearing.  Are the

12     parties ready to proceed?

13          MR. ZIMMERMAN:  We are, Your Honor.  There is a

14     threshold issue that I understand came up at the last hearing,

15     and I have discussed with Mr. McBride, about

16     self-representation.

17          Mr. McBride has expressed an interest in representing

18     himself and keeping me on as standby counsel.  Having spent

19     time with him and understanding his perspective on the case, I

20     would tend to concur with that.  I think -- you know, the Court

21     may have questions for him.  I think he is competent for

22     representation of himself.  And I am happy to be standby

23     counsel, an arrangement that he also agrees with.

24          THE COURT:  Well, you know, typically this Court

25     disfavors standby counsel representation.

1           Mr. McBride, would you please stand.

2           All right.  Now, you have had an opportunity to

3   discuss with Mr. Zimmerman his ability to represent you,

4   correct?

5           THE DEFENDANT:  Yes, I have.

6           THE COURT:  And you have discussed with him your

7   desire to represent yourself?

8           THE DEFENDANT:  That is correct.

9           THE COURT:  Now, you understand that under the

10  circumstances, under the Sixth Amendment of our United States

11  Constitution based on the charges and the fact that you cannot

12  afford counsel, you have an absolute right to be represented by

13  counsel?  And since you cannot afford counsel, the Court could

14  appoint, and actually did appoint counsel to represent you.

15          THE DEFENDANT:  Yes, I understand that.

16          THE COURT:  Do you understand that at the same time

17  as at the original hearing, this Court strongly recommended

18  against self-representation and suggested or strongly suggested

19  that you take the Court's representation?

20          Do you understand?

21          THE DEFENDANT:  Yes, I do.

22          THE COURT:  Do you understand -- I am sure Mr.

23  Zimmerman has explained to you why the Court strongly

24  recommends that you accept the representation rather than

25  representing yourself?

4

1          THE DEFENDANT:  Yes, he did.

2          THE COURT:  And based upon all the information as

3    provided by Mr. Zimmerman as well as the questions and concerns

4    provided by this Court, it is your decision that you still wish

5    to represent yourself?

6          THE DEFENDANT:  Yes, sir.  I -- because of the fact

7    that I know my case better than anybody, and we do have some

8    unusual issues, but I am lacking in procedure and the ability

9    to file documents into the court properly, that's why I would

10   prefer standby counsel.  So that he can direct me in the proper

11   procedures so that we do stay in line with the Court's rules

12   and regulations here so that we can have a fast, and speedy,

13   and efficient operation in this case.

14          I think it's in the best interests of myself, and the

15   Court, and the people as a whole for us to operate as

16   co-counsel rather than having me stuck out here by myself.

17          I don't believe that having somebody represent me is

18   the ultimate or the best way to proceed.  I do believe with all

19   my heart, with all my experience, that me representing myself

20   with Mr. Zimmerman as a co-counsel is in the best interests of

21   justice.

22          THE COURT:  All right.  Well, I don't know whether

23   you quite understand what Mr. Zimmerman's position would be.

24   It's not a situation in which you would have two counsel,

25   yourself as counsel and Mr. Zimmerman as counsel; therefore, he

1    being your co-counsel.

2          What he would essentially be is what we call a

3    standby counsel.  Which means he would sit at the table and do

4    nothing while you do everything.  And the only time he would

5    get involved is when you felt that there was something you

6    absolutely could not do, and then he would have to or you would

7    have to request this Court to have his assistance in that

8    regard.

9          THE DEFENDANT:  I understand.  You do not allow a

10   hybrid defense, I do understand that, sir.

11         THE COURT:  Now, it appears to the Court that your

12   main reason for wanting to represent yourself is your comment

13   that you know your case better than anyone else.

14         Now, you understand that by law and by ethical rules,

15   Mr. Zimmerman has both a legal and ethical obligation to

16   represent your best legal interests?  He has a legal and

17   ethical obligation to represent you competently, zealously, and

18   to the best of his ability.

19         What that means from an ethical and legal standpoint

20   is that Mr. Zimmerman, if allowed to represent you, will be

21   required by law to understand and get up to speed and know your

22   case and the facts of your case just as much as you do.

23         THE DEFENDANT:  I do understand that, sir.  But I

24   also understand that Mr. Zimmerman's primary goal here or

25   priority is to the court, that I fall below the court.  He has

1    a duty to the court, number one.

2                THE COURT:  No, that is incorrect.

3                THE DEFENDANT:  And to me number two.

4                THE COURT:  That is incorrect.  By law and by his

5    State Bar license, as a defense lawyer his number one

6    obligation is to represent the best interests of his client.  I

7    know that because I used to do what Mr. Zimmerman did for

8    14 years before putting on this robe.  And our number one

9    obligation as defense counsel is to represent the best legal

10   interests of our client.  Number one and foremost.

11               THE DEFENDANT:  Okay.  I still stand that I would --

12   I would prefer to represent myself with Mr. Zimmerman as

13   co-counsel -- or standby counsel, I am sorry.

14               THE COURT:  All right.  All right.  Well, once again,

15   the Court strongly suggests against it.  The Court, obviously,

16   having determined, and you made comments to this Court, having

17   determined that you are competent to make said decision, the

18   Court will grant your request.  You can represent yourself pro

19   se.

20               Mr. Zimmerman can on stand -- be standby counsel.  If

21   at any time during these procedures you wish to change your

22   mind and request that Mr. Zimmerman represent you as your

23   counsel, please inform the Court of that most expeditiously.

24               THE DEFENDANT:  Thank you, sir.

25               THE COURT:  All right.  Is the Government ready to

1    proceed with the detention hearing?

2         MR. JOHNSTON:  Yes, we are, Your Honor.

3         THE COURT:  Do you wish to call any witnesses, or are

4    you relying on the information that is contained in the

5    Pretrial Services report?

6         MR. JOHNSTON:  No, Your Honor, we do not intend to

7    call any witnesses.  It is our position that Pretrial Services

8    came to the correct recommendation in recommending that the

9    defendant be detained.

10        We believe that he is both a risk of flight or risk

11   of nonappearance and a danger to the community based on his

12   criminal history, based on the nature of this past conduct, his

13   lack of cooperation and compliance with postconviction

14   supervision, and the similarity between his most recent

15   criminal conviction and the current the charges.

16        We don't believe there is any set of conditions that

17   would guarantee either the safety of the community or his

18   appearance at future court hearings.  He has, as far as we

19   know, no ties to this district, and there is no proper

20   third-party custodian right now that could guarantee his

21   appearance.

22        So for those reasons, the Government believes that he

23   should be detained until trial.

24        THE COURT:  All right.  Mr. McBride, have you

25   received a copy of the original Pretrial Services report out of

8

1    the District of South Carolina as well as the addendum to the

2    Pretrial Services report which was put together by our Pretrial

3    Services Office?

4            THE DEFENDANT:  No, I have not.  But Mr. Zimmerman

5    says he has got it right here for me.  So I have had not time

6    to review it though.

7            THE COURT:  Well, the first question I was going to

8    ask is whether the information contained in those two reports

9    was accurate.  If you have not had an opportunity to review

10   them, you would not be in a position to answer that question.

11           THE DEFENDANT:  Right.

12           THE COURT:  Can we provide Mr. McBride with a copy of

13   those two reports, take him back in lockup, and bring out the

14   next case.  We will recall your case in a just minute, Mr.

15   McBride.

16          NOTE:  At this point, 2:10 p.m., a recess is taken;

17   at the conclusion of which the case continues at 2:23 p.m. as

18   follows:

19          THE COURT:  Mr. McBride, have you now had an

20   opportunity to review both the original Pretrial Services

21   report out of South Carolina as well as the addendum to that

22   report as put together by our Pretrial Services Office?

23          THE DEFENDANT:  Yes, sir, I have.

24          THE COURT:  Now, do you dispute the accuracy of any

25   the information that is contained in either one of those

1  reports?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  All right.  Well, what -- let's start

4  with the report out of South Carolina.

5          THE DEFENDANT:  Actually, I am not real sure which

6  one is which.  I am just going to start at the beginning here.

7  Page -- to go page 2.  I did not find any issue with that one.

8          THE COURT:  With the one out of South Carolina?

9          THE DEFENDANT:  Correct.

10          THE COURT:  All right.  Well, the Court will adopt as

11  factually accurate the information as contained in the Pretrial

12  Services report out of South Carolina.

13          All right.  Now let's move on to the addendum.

14          THE DEFENDANT:  Yes, page 2, number 1.  They are

15  talking about two fraudulent checks.  And it says that there

16  is -- there is no offenses or other -- not reflected in the

17  NCIC because there never were any charges.  The checks were

18  never -- there was a check issue.  I went to the bank.  And it

19  was an issue where somebody had filed or issued some bogus

20  checks on my account.  And I sat with the bank manager and we

21  talked to the Federal Reserve that day and resolved that issue.

22          So they did end up freezing my account, but those two

23  checks were issued, but they were not fraudulent.  And I

24  immediately went into the bank and we straightened it out and

25  resolved that issue.

1          THE COURT:  So you were never charged in that matter?

2          THE DEFENDANT:  Correct.

3          THE COURT:  All right.

4          THE DEFENDANT:  And page 3, number 3.  There is again

5    the talk of promissory notes in there.  And there was -- again,

6    I was never charged with those.  So there was nothing -- there

7    was no charges.

8          THE COURT:  Okay.  Well, this isn't about charges.

9          THE DEFENDANT:  I understand.  I am just saying that

10   they were talking about that I issued these, that these were

11   part of the reason for my being violated.

12          They made the claim that there was -- that this was a

13   crime, but there was never any issue -- there was never any

14   evidence to it.  There was never any charges under that.  They

15   simply used the implication or the claim that there was a thing

16   here to violate me.  There was never any evidence that it even

17   took place.

18          THE COURT:  Let's look at paragraph 2 under --

19   subparagraph (2) under paragraph 3.  In December 2008 the

20   defendant was instructed to stop acting on behalf of others in

21   the filing of court documents and the issuing of promissory

22   notes.  Since December 2008 the defendant continued to file

23   court documents on behalf of others on February 8, 2010, and

24   March 11, 2010.

25          Is that information accurate?

1          THE DEFENDANT:  I cannot say that it is, sir, or that

2    it is not.  At that period of time I had been assisting people

3    in creating documents for themselves.  There may have been

4    these two instances where I had created these documents for

5    them prior to being told to stop.

6          I do remember that whenever he instructed me to stop,

7    I did stop because I knew that there was an issue, that they

8    could revoke my probation or my supervised release.  So I did

9    stop doing that.

10          I do not recall specifically doing these -- preparing

11   these documents after I was being told.  Because I remember

12   specifically that when I was told, I stopped because I would

13   settle the issue, whether I could or could not, before I would

14   file any more.

15          So I cannot recall specifically, but I do recall that

16   whenever I was informed to stop, that I did stop.

17          THE COURT:  All right.  What's next?

18          THE DEFENDANT:  There was number 5, page 4.  They

19   were talking about another promissory note in the amount of $72

20   trillion.  Again, this was never returned to me.  This was

21   never informed -- I was never informed that this was

22   fraudulent.  That there was an issue with it or that it was

23   returned.

24          I was only informed by the Probation officer that --

25   again, to stop doing this.  And again, I did.  There was never

12

1   any charges.  There was never any notice by the IRS that it was

2   fraudulent or they had any issue with it.

3          So --

4          THE COURT:  Okay.  Well, the alleged violation is set

5   forth in the bold information in paragraph 5:  The defendant

6   shall pay special assessments in the amount of $500 and a fine

7   in the amount of $10,000.

8          Did you pay the 500 and the $10,000?

9          THE DEFENDANT:  I do not recall.

10          THE COURT:  All right.  Well, then the Court will

11   adopt as accurate that information.

12          THE DEFENDANT:  Yes, I would agree with that.

13          THE COURT:  Anything else?

14          THE DEFENDANT:  No, that be would it.

15          THE COURT:  All right.

16          THE DEFENDANT:  One other thing.  The use of a

17   secondary Social Security number.  I have never used a

18   secondary Social Security number under alias Mac McBride.

19   That's -- I was not -- I clearly -- I did not do that.

20          THE COURT:  Okay.  All right.  You may be seated.

21          Government.

22          MR. JOHNSTON:  Nothing further to add, Your Honor.

23          THE COURT:  All right.  Do you have any argument, Mr.

24   McBride?

25          The Pretrial Services Office has noted that you

1   present a risk of nonappearance due to the following:  Lack of

2   verified information; nature and circumstances of the charged

3   offense; use of aliases and alternate Social Security numbers,

4   which you now say you did not do; history of failure to report

5   as directed while on postconviction supervision.

6          That you present a danger to the community due to

7   lack of verified information; nature and circumstances of the

8   charged offense; self-reported history of illegal substance

9   use; prior criminal history, to include fraudulent and

10  drug-related offenses; history of arrests and criminal conduct

11  while on postconviction supervision; and history of

12  noncompliance with postconviction supervision.

13         Is there anything you would like to say in regards to

14  the Pretrial Services Office's assessments of nonappearance and

15  danger?

16         And before you begin, the Court is going to ask you,

17  is there anyone that can -- you see, the Court always has a lot

18  of concerns when information, factual or otherwise, in a

19  Pretrial Services report is not confirmed or verified.  So that

20  weighs heavily in the Court's decision in whether it will grant

21  bond or deny bond.

22         The first assessment of danger and nonappearance is

23  lack of verified information.  Is there anyone whose name and

24  number you can provide to Pretrial Services that can verify or

25  confirm the information as contained in this report?

1          THE DEFENDANT:  Going clear back, the only one that

2    would be would be my father, and he just died in November.

3          But I have got family -- my mother, she doesn't talk

4    to me, hasn't talked to me in years, I don't even know how to

5    contact her.

6          So, I mean, as far as who would I know that would

7    verify back 20 or 25 years, I don't know that there is anybody.

8          THE COURT:  I didn't say it has to be 20 to 25 years.

9    I mean, the more information that can be verified or confirmed,

10   the better.  But --

11         THE DEFENDANT:  Right.

12         THE COURT:  The Court at least needs some information

13   confirmed or verified.

14         THE DEFENDANT:  Right.  I mean, I have my ex-wife.

15   The problem is, I don't even know her address or her telephone

16   number because they took my phone and all my contact

17   information.  She lives in Columbus, Ohio.  That was Marti

18   McBride, my first wife.  We married in the early '70s or late

19   '70s.  And she would be the one person who could confirm the

20   majority of this.

21         THE COURT:  All right.  All right.  Well, you may

22   proceed.

23         THE DEFENDANT:  I've been presently on bond, $140,000

24   bond in South Carolina on virtually the same charges for --

25   since November of last year.  The conditions of the bond were

1    that I had an ankle bracelet on.  I appeared at every, every

2    hearing on time, without delay.  I had zero instances or

3    problems with the monitoring for that period of time.

4           My criminal history.  The last two charges, I have

5    only had one charge in 20 years, that was in 19 -- or in 2001.

6    Other than -- and the two cases here, and they both come out of

7    the exact same activity.

8           So that, you know, when they said -- my criminal

9    history over the last 20 years has been minimal.  I have got

10   zero violence in my history.  I don't use any aliases other

11   than some people call me JT, short for James Thomas.  I have

12   never used any alternate IDs or Social Security numbers.

13          The nature and circumstances of the charges and

14   offenses.  They are very serious charges, I grant you that, and

15   I take them very seriously, but they all come out of am I who I

16   say I am.  And if I am indeed the keeper of the Seal of St.

17   Peter and the holder of the office of the Chair of St. Peter,

18   than I absolutely have the authority to issue those.

19          So the real key here or the real crux of this whole

20   thing is am I who I say I am.  And I am in fact the keeper of

21   the Seal of St. Peter, the official --

22          THE COURT:  How did you come to that conclusion?

23          THE DEFENDANT:  I was given the seal in 2010 by Pope

24   Benedict himself.  That has been verified.  I am -- by many

25   people.  I am acknowledged in three separate federal courts as

1    Peter the Divine, the office holder of the Office of the Chair

2    of St. Peter.  In both --

3            THE COURT:  And what legal authority do you believe

4    that gives you in the United States?

5            THE DEFENDANT:  It does not give me any legal

6    authority within the United States.  It simply is -- gives me

7    the authority, it says that I operate outside the municipal

8    corporation.

9            I have never tried or attempted to use it for any

10   commercial gain, simply to -- because if I don't operate within

11   the municipal corporation, I have to have some kind of

12   identification which allows me to live my life.

13           If I have identification within the municipal

14   corporation, I submit myself to the municipal corporation.

15           And, therefore, I have spent 15 years extricating

16   myself from the municipal corporation and attempting to go back

17   to the laws under the Constitution and the laws of God and

18   operate outside of the municipal corporation.

19           THE COURT:  Well, no citizen in the United States can

20   operate outside federal and state law.  Whether you are outside

21   or inside, whatever you call a municipal corporation, is

22   irrelevant.  If you are a citizen of the United States, you are

23   required to follow federal and state law.

24           The problem with you representing yourself is in

25   order to get information from you that the Court may need in

1     order to determine whether detaining you or not is appropriate,

2     the Court has to sometimes delve into the alleged offense.  The

3     Court doesn't want to delve into the alleged offense because if

4     you make any comments concerning it, you may be incriminating

5     yourself.

6                THE DEFENDANT:  I do understand that, sir.

7                THE COURT:  So you see how you put yourself in a very

8     awkward position?

9                THE DEFENDANT:  Yes, sir.  I am not a U.S. citizen,

10    that is a misunderstanding.  I am an American.  I am not a U.S.

11    citizen.  And therein lies the difference.

12               THE COURT:  Were you born here?

13               THE DEFENDANT:  I was born in Ohio, yes.

14               THE COURT:  That makes you a United States citizen by

15    law.  I understand you may disagree, but our law says

16    otherwise.  And as the Court, I must follow the law.

17               THE DEFENDANT:  Then you must also follow the

18    Clearfield Doctrine, is that correct?  And the Clearfield

19    doctrine says that a municipal corporation, even when acting or

20    masquerading as a government, must have a valid contract in

21    order to compel specific performance.  A valid --

22               THE COURT:  Well, a doctrine does not override

23    federal and state statute, no matter what that doctrine is.

24               THE DEFENDANT:  But it does, it does still -- I mean,

25    the code states -- state statutes or federal statutes do not

1    override the fact that a corporation must have a valid

2    contract.

3             THE COURT:  But the U.S. Constitution does.  The

4    United States Constitution is the supreme law of the land.

5             THE DEFENDANT:  That is absolutely correct.

6             THE COURT:  So if this doctrine is not in the United

7    States Constitution, it is irrelevant to this Court.

8             THE DEFENDANT:  The municipal corporation is not in

9    the United States Constitution, sir.

10            THE COURT:  Well, then there is the flaw in your

11   argument.

12            THE DEFENDANT:  Well, I can tell you that the state

13   cannot certify these charges as constitutional.  And if this is

14   where we -- what I have to do, we will do a Rule 11

15   certification of the charges.

16            THE COURT:  Well if you wish to --

17            THE DEFENDANT:  -- because they cannot certify the

18   charges.

19            THE COURT:  If you wish to file any motion you

20   believe is appropriate based on the law, you have an absolute

21   right to do so and the Court will rule upon it.

22            THE DEFENDANT:  Okay.  My past criminal history has

23   all been, like they say, at 12 years and 20 years old.

24            And that's all I have to say.  I have been on this

25   bond for, you know, for seven months without incident.  It did

19

1    have an ankle bracelet, I had no incidents.  I would request

2    that you reinstate that so that I could properly participate in

3    my defense here.

4              THE COURT:  All right, thank you.

5              Well, under the circumstances, the Court does believe

6    there may be a combination of conditions of release that would

7    reasonably assure Mr. McBride's appearance at future court

8    proceedings.

9              However, based upon all the information that is

10   contained in the Pretrial Services report, as well as the

11   information as proffered to the Court by Mr. McBride himself,

12   the Court believes that at this time there is no combination of

13   conditions of release that will reasonably assure the safety of

14   the community.

15             The reason for that is, several of the assessments of

16   danger.  One, lack of verified information.

17             Two, the nature and circumstances of the charged

18   offense.  That essentially being informing other people that

19   they have the right to violate the law.

20             The Court cannot stop Mr. McBride from doing that if

21   he is not detained.  It can stop him if he is because he has no

22   phone to use except that at the Alexandria Detention Center,

23   and he can only use that by making collect calls.

24             Self-reported history of illegal substance abuse,

25   prior criminal history, including two fraudulent and

20

1   drug-related offenses.  One of the most important or the two

2   most important of the history of arrests and criminal conduct

3   while on postconviction supervision, whether Mr. McBride

4   believes his philosophy is accurate or not accurate, the law

5   has deemed it in the past not to be an accurate statement of

6   the law.

7            Notwithstanding that, Mr. McBride continues to

8   conduct himself in said -- in said way even when on supervision

9   and told not to.

10           Therefore, this Court has no reason to believe that

11  if he is released on conditions he will not continue to believe

12  in the philosophy he currently believes in and continues to

13  suggest to individuals that they are not required to follow the

14  law because of his municipal corporation theory.

15           Therefore, at this time the Court finds there is no

16  combination of conditions of release that would reasonably

17  assure the safety of the community.

18           However, Mr. McBride, the Court will let you reserve

19  the right to request a reconsideration of this determination

20  based upon a change of circumstances.

21           Do you understand?

22           THE DEFENDANT:  I do so reserve.

23           THE COURT:  All right.  Mr. McBride is remanded to

24  the custody of United States Marshals pending further

25  proceedings.

1          There being nothing further, this Court stands

2   adjourned.

3          NOTE:  The hearing concluded at 2:41 p.m.

4   -------------------------------------------------

5

6   C E R T I F I C A T E  of  T R A N S C R I P T I O N

7

8

9          I hereby certify that the foregoing is a true and

10  accurate transcript that was typed by me from the recording

11  provided by the court.  Any errors or omissions are due to the

12  inability of the undersigned to hear or understand said

13  recording.

14

15          Further, that I am neither counsel for, related to,

16  nor employed by any of the parties to the above-styled action,

17  and that I am not financially or otherwise interested in the

18  outcome of the above-styled action.

19

20

21

22                    /s/ Norman B. Linnell

23                    Norman B. Linnell

24                    Court Reporter - USDC/EDVA

25