UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case 1:14-cr-00175 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Alexandria, Virginia |
| | ) | July 18, 2014 |
| JAMES THOMAS McBRIDE, | ) | 10:10 a.m. |
| | ) | |
| Defendant. | ) | |
| | ) | Pages 1 - 13 |

TRANSCRIPT OF MOTIONS HEARING

BEFORE THE HONORABLE ANTHONY J. TRENGA

UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:

KOSTA S. STOJILKOVIC, ESQUIRE
WILLIAM E. JOHNSTON, ESQUIRE
OFFICE OF THE UNITED STATES ATTORNEY
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

FOR THE DEFENDANT:

JAMES THOMAS McBRIDE, *pro se*

JEFFREY D. ZIMMERMAN, ESQUIRE
SMITH & ZIMMERMAN, PLLC
108 North Alfred Street
Alexandria, Virginia 22314
(703) 548-8911

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

THE CLERK: Criminal Case 1:14-cr-175, *United States of America v. James Thomas McBride*.

Will counsel please identify themselves for the record.

MR. JOHNSTON: Good morning, Your Honor. William Johnston and Kosta Stojilkovic for the United States.

THE COURT: Good morning.

We're here on defendant's two motions. One is for a stay. One is for a continuance. The Court has reviewed the motion for stay. The Court is going to deny that motion.

Mr. Zimmerman, would you like to speak to the motion for a continuance?

MR. ZIMMERMAN: Your Honor, as the Court is aware, I'm standby counsel.

THE COURT: I understand. I'm sure Mr. McBride doesn't have any objection to your addressing this issue.

(Mr. Zimmerman and Mr. McBride confer.)

MR. ZIMMERMAN: I would be happy to address the Court, Your Honor.

THE COURT: All right.

MR. ZIMMERMAN: Your Honor, as the Court is aware, this is a substantial case. This is a 16-page

indictment charging a conspiracy to defraud essentially that lasted over a year.

Mr. McBride, at his initial appearance, the detention hearing, expressed his desire to represent himself, to exercise his *Faretta* right. I was brought in to discuss this with him. Then at the detention hearing, it was determined by Judge Davis that he could exercise his *Faretta* right. I was kept on as standby counsel.

THE COURT: You're familiar with the volume of discovery that's been provided?

MR. ZIMMERMAN: I am, Your Honor.

THE COURT: In a general fashion?

MR. ZIMMERMAN: I'm sorry, Your Honor?

THE COURT: In a general fashion you are?

MR. ZIMMERMAN: In a general fashion, I am. Although, frankly, this is my first time as standby counsel. I think this is a pretty unusual arrangement.

We went to arraignment. The codefendant, Sharyn Brown, had previously been arraigned and had set the trial date, and it's a week from Monday. Then the government has provided -- there was initial discovery of about 3,500 pages plus recordings, about 60 hours worth of jailhouse recordings. The documents were provided to Mr. McBride.

The recordings, he doesn't really have an ability to listen to those at the jail. The government uses proprietary software that can be difficult to use. We made arrangements with the U.S. Attorney's Office to have him brought over. They had expressed initially a desire to always have me present when Mr. McBride was there, but that turned out to be unworkable. We've simply upped the amount of time that he's spending over there.

There's also a subsequent disclosure at our request of all the e-mails that were subpoenaed from his e-mail accounts. This is an additional 40,000 pages of e-mails. I've looked at it. I'd estimate probably 10 percent of it is spam, diet pill ads. That still leaves a substantial amount of e-mails to review.

The government makes a case in their pleadings that they're only using one phone call and that they are only using a discrete amount of documents. But of course, we're entitled to review all of them. It's Mr. McBride's contention that -- and a reasonable one -- that there is significant exculpatory evidence within the rest.

As the Court is aware, he had timely filed some motions. In addition, there is evidence in pending cases in South Carolina that we are working --

these are documents that were seized from him, boxes of documents, as well as items relevant to the charges that we've been working to get up here to him.

Essentially, Judge, there really -- the government characterizes Mr. McBride's position as obstructive, but it really hasn't been. He has a nontraditional approach to his defense. He timely filed his motions. He has been working diligently with me and with the government to review evidence.

Once he spent a day at the U.S. Attorney's Office meticulously going through these recordings, taking notes, they realized that my presence wasn't needed. He simply sits down and reviews the evidence.

I don't think the Court has seen him in court and may get a chance today. He is simply trying to defend himself. He is not trying to obstruct anything, but the 53 days from arraignment from this federal case to when he has to try it, we would just submit it just isn't sufficient time to review all the evidence, to discuss legal theories, to prepare the case.

Mr. McBride as *pro se* is going to have to run the case. I will always be available as standby counsel, but he needs to be familiar with the procedures. We simply need some more time.

THE COURT: All right. Mr. McBride, since

you are representing yourself, I will give you an opportunity to speak to this motion. Please don't repeat what Mr. Zimmerman has told the Court, but I will give you an opportunity to say what you'd like.

THE DEFENDANT: Thank you. Yes. From the beginning, Mr. Zimmerman suggested that I file a motion for a continuance. I told him that my intent was to honor the Court's schedule. I have worked diligently to, in fact, honor that. It just came to a point where it became impossible. We just received a dump of 40,000 e-mails. In a cursory search of that, I found that there was indeed some exculpatory evidence in there. I was only able to view a little bit of the first disk.

I know that there's evidence in South Carolina that is very important to my case. We've been trying to get access to that.

I apologize for the late motion for the continuance. It's been my intent from the beginning to honor the Court's schedule. I have been very diligent at that. It just became impossible.

THE COURT: All right.

THE DEFENDANT: I think it would be in the best interest of justice if you allow me the time to prepare a fair and honorable defense.

THE COURT: All right. Thank you.

Counsel.

MR. JOHNSTON: Your Honor, the government acknowledges that under many circumstances a *pro se* incarcerated defendant would be entitled to some more time to prepare for his defense. So the government recognizes that the Court would take this motion seriously even when filed so close to trial. We do not believe that the defendant is entitled to more time, nor do we believe that a continuance is in the interest of justice.

There's a couple of preliminary points that we would like to address that, I think, need to be cleared up. First is the statement that the government just recently produced 40,000 e-mails. We would just like to bring some clarity to that. The United States executed a number of search warrants on the defendant's e-mail accounts. As the Court is aware, this follows a two-step process where we ask that the e-mail provider hand over the e-mails that pertain to the conduct that's been investigated. But what most of the providers do is just do a full dump. Then we're only authorized to go in, inspect, and seize the portion of it that's related to the search warrant itself.

So the 3,500 documents that were initially

turned over, those were the ones that were actually seized by the government. The rest of them just so happened to be in our possession because of the way that the Internet provider conducts the search warrant process. They don't go and analyze the terms to make sure that they're only producing what's within the scope of this search warrant.

The other point that we want to make is that the government has made every accommodation possible. The discovery was actually provided pre-arraignment. The jail calls are -- you know, only half of them actually can't be reviewed by standby counsel. These came from two different jails in South Carolina and Ohio. They relate to a period of prior incarceration from the defendant. Most of the calls -- basically, almost the entirety of the calls postdate the charged conduct in the indictment, which is why the government is only using one of the phone calls. Because all the rest just have really no bearing on the case.

From the beginning, the government tried to make sure that the defendant had every opportunity to be able to review the evidence. When the defendant -- when we first received the request that he wants to come to review a subsection of the recordings -- because there are two jail call sets, one from Ohio,

one from South Carolina. When we were informed that he couldn't review the Ohio ones, we had him come over two weeks ago. He came over for one day, and we would note that the defendant left early beyond the allotted time.

When we were informed a week later that he would like to come back. We set up immediately for three days this week, Tuesday, Thursday, and -- Tuesday, Wednesday, and Thursday for the defendant to come over and review the calls. He came over on Tuesday and Wednesday, both days left early, and canceled on Thursday.

So we think that to the extent he has not been able to review the Ohio jail calls, it has been perhaps due to a lack of diligence but certainly not for a lack of accommodation on the part of the United States in ensuring that he can prepare for trial.

The last point that we would make is that the defendant's motions showed that he did have sufficient time and opportunity to be able to pursue some defense. And to the extent that those were unsuccessful and meritless and now he decides that he actually wants to engage the evidence, that shows that he has not been diligent in preparing for his defense. If later in the game you want to actually engage with the evidence, that's not a basis for granting a continuance.

We make the final note that if the Court is inclined to give the defendant a bit more time, a date in early August would be acceptable to the government.

So under these circumstances, the government believes that a continuance is not in the interest of justice.

THE COURT: All right. Thank you.

Mr. Zimmerman.

MR. ZIMMERMAN: Just very briefly, Judge.

THE COURT: Yes.

MR. ZIMMERMAN: Just a few points. The fact that a lot of calls relate to post-charged conduct -- I mean, they're relevant. It is very typical in cases which -- this is the reason they pull these calls, actually. There are cases in which defendants say things on the phone calls that inculpate them and they want to use them, but there's also times when the defendant -- their behavior post-conduct on those calls exculpates them. They behave in a way on those calls that's consistent with the defense. That's why the government pulls those calls. That's why the government produces those calls. So the fact that the calls are after the conduct and some of it does relate to that, they still must be reviewed.

Mr. McBride has been diligent. This really

isn't so much an issue of access to the evidence. It's really an issue of volume of the evidence. The government has been producing a lot of evidence. As they point out, they have been producing it.

Mr. McBride, initially, when he gets into the case, he has a very short motions deadline. So he focuses on pretrial motions, on legal issues. He files those. The government is sort of creating a catch-22 here. Because if Mr. McBride doesn't diligently file motions, they say, well, he's not diligently filing motions. If he does diligently file motions, they say, well, obviously he's engaged in the process. He's just not looking at the evidence. Well, he's taking it one step at a time. He files the motions. He's considering the evidence as well, and then he switches on trial prep mode.

When he's brought over initially to the U.S. Attorney's Office -- again, partially to accommodate my schedule because they wanted me there -- he was fully shackled, which includes having his arms in what's called a black box to a waist chain. This made it impossible for him to take notes. So there was a procedure so that he could -- because he was *Faretta*, because he was *pro se*, that he could review the evidence. The government accommodated us, and we

worked together on this. But that sort of took an afternoon. Then he has to get back to the jail in the early afternoon.

At a certain point this week, he is switching over his strategy from reviewing calls to getting ready for this hearing. So at every stage he is just trying to get ready. It's a lot of evidence. It's a lot of law, and it's a serious indictment. He's simply requesting some more time.

THE COURT: All right. Thank you.

The Court has reviewed the motion. There are some unusual aspects to this case. Under all the circumstances, the Court is going to grant the motion and allow a short continuance. I'm going to continue this case to August 11.

MR. ZIMMERMAN: If I may, Judge, I apologize. I have a previously scheduled family vacation. I have to be out of the country starting on the 14th to the 24th.

THE COURT: Of August?

MR. ZIMMERMAN: Of August.

THE COURT: That's fine. We'll proceed on August 11. All right.

MR. ZIMMERMAN: All right.

THE COURT: Thank you.

MR. STOJILKOVIC: For the record, Your Honor, we think the government's case will take a day, a day and a half.

THE COURT: All right. Thank you.

Counsel is excused. The defendant is remanded.

MR. ZIMMERMAN: Thank you, Judge.

----------------------------------
Time: 10:25 a.m.

I certify that the foregoing is a true and accurate transcription of my stenographic notes.

/s/
Rhonda F. Montgomery, CCR, RPR